# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| LEIFASHLEY, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : CIVIL ACTION NO. |
| | : 1:11-CV-3762-RWS |
| BANK OF AMERICA, N.A., *et al.*, | : |
| | : |
| | : |
| Defendants. | : |

## **ORDER**

This case comes before the Court on Plaintiff's Motion for Injunctive Relief [2], Defendants' Motion to Dismiss [4], Plaintiff's Motion to Remand to State Court [5], and Plaintiff's Motion to Compel Defendant's Certificate of Interested Persons and Corporate Disclosure Statement [8]. After a review of the record, the Court enters the following order.

## **I. Factual Summary[1]**

In October 2005, Plaintiff Leif Ashley filed an application with Countrywide Home Loans, Inc. ("Countrywide") d/b/a America's Wholesale Lender ("AWL") to refinance his residential mortgage obligation on his home

---

[1] All facts are drawn from the Complaint and attached Exhibits.

at 849 Canton Valley Drive, Canton, Georgia 30114. That application was approved, and Plaintiff obtained a mortgage loan from AWL in the principal amount of $315,000. The loan specifically identified AWL as the "Lender" and was made payable to AWL. As security for the loan, Plaintiff executed a security deed which named Mortgage Electronic Registration Systems, Inc. ("MERS") (solely as nominee for the lender, its successors and assigns) as the "grantee."

In January 2006, Plaintiff's loan was "apparently" pooled with others into the CHL Mortgage Pass-Through Trust, 2006-3, a common law New York Trust "of which Defendant [Bank of New York Mellon ("BNYM")] purports to serve as Trustee." The Trust's Pool Servicing Agreement stated that BNYM would acquire the loan no later than January 31, 2006. However, no such transfer occurred until August 9, 2011, when MERS for the first time assigned all rights in Plaintiff's loan to BNYM as trustee.

Countrywide serviced Plaintiff's loan until Countrywide was acquired by Defendant Bank of America, N.A. ("BOA") in January 2008. Following the acquisition, Defendant BOA continued servicing Plaintiff's loan.

In early 2008, Plaintiff fell behind on his mortgage payments, and MERS published a Notice of Sale Under Power, declaring its intent to foreclose on the property. However, after the Notice was published and prior to foreclosure, Plaintiff cured the default. After a subsequent attempt to modify the loan in August 2011, Defendant BOA told the Plaintiff that it had the full power to negotiate the terms of the loan but that it was going to foreclose on October 4, 2011. On September 9, 2011, BOA published a Notice of Sale Under Power which alleged that Plaintiff was in default and listed BNYM as Plaintiff's Attorney-In-Fact.

On September 30, 2011, Plaintiff filed suit in Cherokee Superior Court against the Defendants, requesting that court to declare who is Plaintiff's secured creditor, to enjoin the foreclosure sale, and asserting substantive counts of fraud, negligent misrepresentation, and gross negligence. Essentially, Plaintiff alleges that neither BOA nor BNYM are Plaintiff's secured creditors; thus, neither of these entities may foreclose on the property. On November 2, 2011, the Defendants removed the action to this Court, relying upon diversity jurisdiction. The Defendants then filed a motion to dismiss, and the Plaintiff has filed a motion to remand. The Court will consider each motion in turn.

## II. Motion to Remand

Plaintiff first moves to remand this action, arguing that the Defendants have not proved by a preponderance of the evidence that the amount in controversy exceeds $75,000. A defendant may only remove an action from state court if the federal court would possess original jurisdiction over the subject matter. 28 U.S.C. § 1441(a). The district court may exercise original jurisdiction where the amount in controversy exceeds $75,000 and the suit is between citizens of different states. 28 U.S.C. § 1332(a)(1). In the present case, the parties do not dispute that they are citizens of different states; the only question is whether the amount in controversy has been satisfied.

When determining subject-matter jurisdiction, a court must construe the removal statute narrowly and resolve any uncertainties in favor of remand. Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994). Further, the party seeking removal bears the burden of establishing federal jurisdiction. Friedman v. N.Y. Life Ins. Co., 410 F.3d 1350, 1353 (11th Cir. 2005). The burden a defendant must satisfy depends upon whether the plaintiff specified the amount of damages in the complaint. When a plaintiff makes an unspecified claim for damages, as was done here, a removing defendant has a lesser burden

4

and must establish damages by a preponderance of the evidence. Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353, 1357 (11th Cir. 1996), rev'd on other grounds, Cohen v. Office Depot, Inc., 204 F.3d 1069, 1076-77 (11th Cir. 2001).

The Eleventh Circuit has stated:

> When a plaintiff seeks injunctive or declaratory relief, the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective . . . . In other words, the value of the requested injunctive relief is the monetary value of the benefit that would flow to the plaintiff if the injunction were granted.

Cohen, 204 F.3d at 1077. A federal court cannot find that it has subject-matter jurisdiction if the benefit a plaintiff could receive is "too speculative and immeasurable to satisfy the amount in controversy requirement." Leonard v. Enterprise Rent a Car, 279 F.3d 967, 973 (11th Cir. 2002). To determine the amount in controversy

> the court considers the document received by the defendants from the plaintiff – be it the initial complaint or a later received paper – and determines whether that document and the notice of removal unambiguously establish federal jurisdiction . . . . In assessing whether removal was proper in such a case, the district court has before it only the limited universe of evidence available when the motion to remand is filed – i.e., the notice of removal and accompanying documents. If that evidence is insufficient to establish that removal was proper or that jurisdiction was present,

5

> neither the defendants nor the court may speculate in an attempt to make up for the notice's failings . . . . The absence of factual allegations pertinent to the existence of jurisdiction is dispositive and, in such absence, the existence of jurisdiction should not be divined by looking to the stars.

Lowery v. Ala. Power Co., 483 F.3d 1184, 1213-1215 (11th Cir. 2007).

Defendants' Notice of Removal only states one fact to support this Court's jurisdiction–that the original loan amount was $315,000. However, that fact does not support that the value of this litigation is greater than $75,000.

Defendants argue that because the "Plaintiff's apparent request for declaratory relief or injunctive relief, if granted, would place the property and its ownership in controversy and Plaintiff appears to seek sole title and ownership of the property free from encumbrances of the loan," Plaintiff's claim exceeds the amount in controversy requirement. Def.'s Opp., Dkt. No. [13] at 6. However, the Complaint makes no such demand. Plaintiff does not contest that he has an outstanding loan on the property, rather he contests whether the Defendants are secured creditors such that they could institute foreclosure proceedings. See Cmpl., Dkt. No. [1-1] at ¶¶ 18-31. Essentially, his declaratory judgment count seeks to have "doubt and uncertainty" regarding who owns the loan resolved–not to have the loan declared invalid. See id. at ¶

6

30. Thus, the original loan amount has no bearing on this Court's subject matter jurisdiction. See Horace v. LaSalle Bank Nat'l Ass'n, No. 3:08-CV-1019-MHT, 2009 WL 426467 (M.D. Ala. Feb. 17, 2009) (finding that the defendant's sole basis of the amount in controversy requirement–the value of the loan–did not meet the preponderance of the evidence test for jurisdiction because the plaintiff did not claim that her property should be free of that encumbrance).

As well, the injunction seeks only to prevent these Defendants–who Plaintiff alleges have no standing–from foreclosing on his loan. Thus, the value he would receive from such an injunction is the ultimate benefit to him–the ability to stay in his still-encumbered home. Because the Court can only speculate what equity Plaintiff has in his home or what value he would obtain from not being foreclosed upon, this request does not satisfy the amount in controversy requirement either.

Defendants also argue that "the mere request of punitive damages meets the jurisdictional amount in controversy to be in federal court." Def.'s Opp., Dkt. No. [13] at 5. However, Defendants' supporting citations do not stand for such a proposition. In Allen v. R&H Oil & Gas Co., 63 F.3d 1326, 1336 (5th Cir. 1995), the Fifth Circuit did state that "[a] court, in applying only common

7

sense, would find that if the plaintiffs were successful" they would exceed the amount in controversy. However, that case involved 512 plaintiffs, three companies, and asserted a "wide variety of harm" which was allegedly caused by the defendants. Common sense would support the Fifth Circuit's decision, but does not support an amount in controversy greater than $75,000 here when no foreclosure has occurred.

As well, Napier v. Wal-Mart Stores East, LP, No. 4:04-CV-0010-SEB-WGH, 2004 WL 950657, at *1-2 (S.D. Ind. April 26, 2004), does not stand for Defendant's broad assertion. In Napier, the plaintiff alleged that the defendant had been publicly wrongly stopped for shoplifting and, in the attempt to arrest her, the defendant "forcefully grabbed her by the upper arm and then held her breast and struggled with her enough for her blouse and jacket to be removed in the process." Id. As a result, plaintiff alleged that her damages consisted of "bruising on her body, mental anguish, trauma, loss of reputation in the community, humiliation and loss of self respect." Id. Plaintiff's claims also triggered a statutory punitive provision which capped punitive damages at $50,000. The court ruled that underlying "false arrest, false imprisonment, defamation, and assault and battery" claims in conjunction with the punitive

8

potential was sufficient to exceed the $75,000 hurdle. However, contrary to Defendants' assertion, simply pleading a punitive damages request did not exceed the amount in controversy requirement; rather, plaintiff's potential damages in conjunction with the punitive cap did.[2]

Here, the Court finds that the Defendants have not met their burden that Plaintiff's claims exceed the amount in controversy requirement. As to punitive damages, the only intentional tort which Plaintiff alleges is fraud, and the only conduct which supports that count is that the Defendants held themselves out to be the secured creditors when they were not. But, it is unclear what damages have flowed from that misrepresentation since the foreclosure has not occurred and the Plaintiff remains in his home. Even looking at all of the potential claims in conjunction, the Court could only speculate that Plaintiff's damages exceed $75,000 as the only fact which Defendants' alleged in their Notice of Removal

---

[2]Defendants' final citation also does not stand for their general proposition. Smith v. Associates Capital Bank, No. 1:99-CV-301-P-A, 1999 WL 33537131, at *6-7 (N.D. Miss. Dec. 6, 1999) concerned whether a punitive award should be aggregated among sixteen individual plaintiffs such that each would exceed the amount in controversy requirement. After first finding that the full value of the potential award would count against each of the individual plaintiffs, the Court further found the defendants' citations to two multi-million dollar punitive awards by juries in the same state for the same claims were sufficient to support the amount in controversy requirement. Again, the pleading of punitive damages did not meet the requirement, the evidence did.

9

is ultimately irrelevant and the Complaint does not provide any additional factual support. As this Court can only speculate that Plaintiff's damages exceed $75,000, Plaintiff's Motion to Remand [5] is **GRANTED**.

**III. Conclusion**

Based on the foregoing, Plaintiff's Motion to Remand [5] is **GRANTED**. The Clerk is directed to **REMAND** this action to the Superior Court of Cherokee County.

**SO ORDERED**, this   21st   day of June, 2012.

_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)